UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.

RICKY CHRISTOPHER,

        Defendant.

Case No. 17-CR-217

## PLEA AGREEMENT

1.      The United States of America, by its attorneys, Richard G. Frohling, Acting

United States Attorney for the Eastern District of Wisconsin, and Gail J. Hoffman and

Elizabeth M. Monfils, Assistant United States Attorneys, and the defendant, Ricky

Christopher, individually and by attorney Gregory R. Parr, pursuant to Rule 11 of the Federal

Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.      The defendant has been charged in two counts of a Thirty-One-Count Indictment,

which alleges violations of Title 21, United States Code, Sections 846, 841(a)(1) and

841(b)(1)(C); and Title 18, United States Code, Sections 1956(a)(1)(B)(i)-(ii), 1956(h), and 2.

3.      The defendant has read and fully understands the charges contained in the

indictment. He fully understands the nature and elements of the crimes with which he has been

charged, and those charges and the terms and conditions of the plea agreement have been fully

explained to him by his attorney.

4.      The defendant voluntarily agrees to plead guilty to the following count set forth in

full as follows:

## COUNT ONE
### THE GRAND JURY CHARGES:

1.      Beginning by at least January 2013, and continuing until on or about December 6, 2017, in the State and Eastern District of Wisconsin and elsewhere,

### RICKY CHRISTOPHER,

knowingly and intentionally conspired with each other, and with persons known and unknown to the grand jury, to possess with the intent to distribute and to distribute a mixture and substance containing a detectable amount of a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

2.      With respect to defendants Clifton L. Morrison, Jose Rodriguez, Miguel Rodriguez, Luis Nevarez, Brenda Y. Valverde, Ronnie McFadden, and Frederick Perry, the amount involved in the conspiracy attributable to each defendant as a result of his or her own conduct, and the conduct of other co-conspirators reasonably foreseeable to him or her, is one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

3.      With respect to defendants Dewayne Alexander, Sr., David Wilder III, Tommie Stevens, and Germaine D. Johnson, the amount involved in the conspiracy attributable to each defendant as a result of his own conduct, and the conduct of other co-conspirators reasonably foreseeable to him, is 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

4.      With respect to defendant Ricky Christopher, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other co-conspirators reasonably foreseeable to him, is a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance

All in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A), (b)(1)(B), and (b)(1)(C), and Title 18, United States Code, Section

5.      The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

2

## Introduction

In 2014, case agents began an investigation into Clifton MORRISON, a large-scale drug trafficker in Milwaukee. In sum, the investigation revealed that Clifton MORRISON obtained heroin and cocaine from Jose RODRIGUEZ. MORRISON, or a drug trafficking organization (DTO) member, met directly with either Jose RODRIGUEZ or Miguel RODRIGUEZ to obtain the narcotics and/or to provide the RODRIGUEZ' with drug-related proceeds. In particular, on some occasions, either Frederick PERRY or Ricky CHRISTOPHER, couriers for MORRISON, traveled to deliver drug-related proceeds to and/or obtain narcotics from Miguel RODRIGUEZ. These meetings took place predominantly in Kenosha, Wisconsin and Chicago, Illinois.

DTO members transported the heroin from Kenosha, Wisconsin or Chicago, Illinois to Milwaukee, Wisconsin for distribution. MORRISON then distributed the heroin and cocaine to mid-level distributors of the MORRISON DTO, including Ronnie MCFADDEN, Tommie STEVENS, David WILDER, Germaine JOHNSON, and Dewayne ALEXANDER Sr. MORRISON also provided narcotics to others, such as Daniel CARTER, Don WALKER-CRUSE, David COLEMAN, and Kellin MORRISON. In addition, MORRISON laundered drug proceeds through INNOVATIVE CONSTRUCTION DESIGN, LLC using DTO members. Furthermore, MORRISON laundered drug proceeds using Dewayne ALEXANDER, Jr., to purchase 42XX/A N. 52nd, Street, Milwaukee, Wisconsin, the stash location, which members of the MORRISON DTO refer to as "the office." MORRISON DTO members processed, packaged, stored, and distributed narcotics from "the office."

## Court Authorized Interceptions

On March 30, 2017, the Honorable J.P. Stadtmueller, United States Judge, Eastern District of Wisconsin, signed an original Order authorizing the interception of wire and electronic communications over the cellular target telephones associated with this investigation, including, but not limited to cellular phones used by Clifton MORRISION. Thereafter, Judge Stadtmueller, along with other district court judges in the Eastern District of Wisconsin, signed orders authorizing the interception of other target telephones, totaling eighteen. Interception pursuant to these orders terminated on or about December 6, 2017, upon the execution of federal arrest and search warrants.

## RICKY CHRISTOPHER

The investigation revealed that Ricky CHRISTOPHER often served as a narcotics courier for MORRISON. CHRISTOPHER has met with Miguel RODRIGUEZ to obtain narcotics on behalf of MORRISON. Between July 8, 2017 and September 18, 2017, approximately 123 intercepted calls and/or text messages between CHRISTOPHER and MORRISON were deemed criminal and pertinent in nature.

For example, on August 17, 2017, MORRISON and Jose RODRIGUEZ talk over the phone at which time Jose RODRIGUEZ asks MORRISON to get money together on a previously-delivered amount of heroin ("truck"). Then, on September 7, 2017 at 6:11 p.m., MORRISON called Jose RODRIGUEZ and stated, "I'm at maybe 10…trying to get to 15." Jose RODRIGUEZ asked when MORRISON would have "15." MORRISON advised he had to "do one more little

3

round up here tomorrow…see what it comes to." Jose RODRIGUEZ indicated he was "Trying to maneuver something. I'm waiting for somebody else to come from out of town;" and, "Right now, the other person I owe, I'm not gonna get nothing 'til I pay that debt off." Jose RODRIGUEZ told MORRISON to call Miguel RODRIGUEZ to provide Miguel RODRIGUEZ with drug-related proceeds.

Miguel RODRIGUEZ called MORRISON numerous times on September 8, 2017, but all the calls went unanswered. On September 9, 2017, at 11:09 a.m., Miguel RODRIGUEZ called MORRISON again. MORRISON and Miguel RODRIGUEZ agreed to meet in the afternoon; however, MORRISON later called Miguel RODRIGUEZ and asked to reschedule their meeting for the following day. At 7:24 p.m., MORRISON, using Target Telephone #8, called CHRISTOPHER at (414) 914-XXXX. MORRISON said he missed his "appointment," and that he wanted to "leave these receipts so somebody could take them, uh, to dude tomorrow." CHRISTOPHER acknowledged. MORRISON reminded CHRISTOPHER that CHRISTOPHER needed a vehicle with license plates – "or you could give them to the Cable guy or something." CHRISTOPHER again indicated he would meet Miguel RODRIGUEZ. CHRISTOPHER and MORRISON then agreed to meet before 9:00 p.m. Based upon their training, experience, and familiarity with the investigation, case agents believe MORRISON informed CHRISTOPHER that MORRISON had not previously met with Miguel RODRIGUEZ, and asked if CHRISTOPHER would be able to deliver the drug-related proceeds ("receipts") to Miguel RODRIGUEZ. Case agents have observed Ronnie MCFADDEN operating a truck bearing a Time Warner Cable placard and believe MCFADDEN is or was an employee of Time Warner Cable. Therefore, case agents believe that MORRISON told CHRISTOPHER that CHRISTOPHER could give the drug-related proceeds to MCFADDEN ("or you could give them to the Cable guy or something") if CHRISTOPHER was unable to meet with Miguel RODRIGUEZ.

On September 10, 2017, at 10:43 a.m., MORRISON called Jose RODRIGUEZ. MORRISON advised he would have somebody else meet with Miguel RODRIGUEZ. Jose RODRIGUEZ asked, "Where you standing at? What street?" MORRISON replied, "Twelve and a half." Jose RODRIGUEZ acknowledged. Case agents believe MORRSON advised he had $12,500 in drug-related proceeds for Jose RODRIGUEZ ("Twelve and a half."). At 10:57 a.m., MORRISON called CHRISTOPHER. CHRISTOPHER asked, "What time he say, 12:30? 1:00?" MORRISON advised he would call Miguel RODRIGUEZ and let CHRISTOPHER know.

At 11:00 a.m., MORRISON, using Target Telephone #15, called Miguel RODRIGUEZ at (224) 436-XXXX. MORRISON asked, "What time you want to get up there?" Miguel RODRIGUEZ replied, "Well you tell me." MORRISON said, "Well, let's say… 'Cause I'm, uh, Rick gonna come up there 'cause I'm at the game. I'm at the Packers game. So, uh, Rick gonna go up there so he ready whatever time I would say, uh, say 12:00, 12:30." Miguel RODRIGUEZ confirmed, "Okay, 12:30. Okay, by the Wings." MORRISON reiterated, "12:30. Okay." Case agents know Miguel RODRIGUEZ often meets either MORRISON or MORRISON's associate to obtain drug-related proceeds, deliver narcotics and/or obtain returned poor quality narcotics at Buffalo Wild Wings located at 71XX 118th Ave, Kenosha, Wisconsin. Therefore, case agents believe MORRISON planned on sending Ricky CHRISTOPHER to meet with Miguel RODRIGUEZ to deliver drug-related proceeds ("Rick gonna come up there."). Miguel RODRIGUEZ advised MORRISON that he would meet CHRISTOPHER at Buffalo Wild Wings at 12:30 p.m. ("Okay 12:30. Okay, by the Wings.").

4

At 11:20 a.m. and 11:21 a.m., MORRISON, using Target Telephone #8, sent two text messages to CHRISTOPHER at (414) 914-XXXX that read, "12:30" and "Bw3." At 11:54 a.m., CHRISTOPHER, using (414) 914-XXXX, sent a text message to MORRISON at Target Telephone #8 that read, "OK." Case agents know that BW3 is often used as shorthand to refer to Buffalo Wild Wings. Therefore, based on the aforementioned conversation between MORRISON and Miguel RODRIGUEZ, case agents believe MORRISON directed CHRISTOPHER to meet with Miguel RODRIGUEZ at Buffalo Wild Wings at 12:30 p.m., and that CHRISTOPHER acknowledged.

On September 10, 2017, at 11:58 a.m., Jose RODRIGUEZ sent a text message to his supplier. This text message read, "Getting a check in a couple hrs. Will hit you up!" Based upon their training, experience, and familiarity with the investigation, case agents believe Jose RODRIGUEZ advised his supplier that Jose RODRIGUEZ would be receiving drug-related proceeds and would contact the supplier once the cash was in hand.

At 12:09 p.m., MORRISON called CHRISTOPHER. CHRISTOPHER stated, "Yo, it's going down." Case agents believe CHRISTOPHER advised he was on his way to meet with Miguel RODRIGUEZ.

At 12:45 p.m., Miguel RODRIGUEZ, using (224) 436-XXXX, called MORRISON at Target Telephone #15. Miguel RODRIGUEZ advised he just arrived at Buffalo Wild Wings. MORRISON said he told CHRISTOPHER to go inside Buffalo Wild Wings when CHRISTOPHER arrived. Miguel RODRIGUEZ stated he did not yet see CHRISTOPHER, and instructed MORRISON to remind CHRISTOPHER to go inside once he arrived.

At 2:27 p.m., Miguel RODRIGUEZ, using (224) 436-XXXX, called Jose RODRIGUEZ at Target Telephone #9 and said, "I got it now." Jose RODRIGUEZ acknowledged and later instructed Miguel RODRIGUEZ to come to Jose RODRIGUEZ's residence. Case agents believe Miguel RODRIGUEZ called to advise Jose RODRIGUEZ that Miguel RODRIGUEZ had received the drug-related proceeds.

In addition, a confidential source, CS-5, would further testify that s/he gave CHRISTOPHER "1-gram samples" of heroin two times, and then supplied CHRISTOPHER with 3-5 grams of heroin on "rare" occurrences. CS-5 further indicated that s/he paid approximately $60,000-$65,000 per kilogram of heroin, and thus $12,500 represents the value of approximately 200 grams of heroin.

Based on CS-5's information and the interceptions, conservatively estimated, Ricky CHRISTOPHER is responsible for the distribution of at least 200 grams of a mixture and substance containing heroin.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6.      The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: 20 years and $1,000,000. The count also carries a minimum of 3 years and a maximum life term of supervised release, and a mandatory special assessment of $100.

7.      The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney, including any possibility that the defendant may qualify as a career offender under the sentencing guidelines.

## DISMISSAL OF REMAINING COUNT

8.      The government agrees to move to dismiss the remaining count of the indictment at the time of sentencing.

## ELEMENTS

9.      The parties understand and agree that in order to sustain the charge of 21 U.S.C. §§ 841(a)(1) and 846, conspiracy to possess with intent to distribute or to distribute controlled substances as set forth in Count One, the government must prove each of the following propositions beyond a reasonable doubt:

First, the conspiracy, as alleged in the indictment, existed; and

Second, the defendant knowingly and intentionally joined the conspiracy with the intention to further the conspiracy.

## SENTENCING PROVISIONS

10.      The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

6

11.     The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12.     The defendant acknowledges and agrees that his attorney has discussed the potentially applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13.     The parties acknowledge and understand that before sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

14.     The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15.     The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

7

16.     The parties agree to recommend to the sentencing court that the relevant conduct attributable to the defendant is at least 100 grams but less than 400 grams of a mixture and substance containing heroin, a Schedule I controlled substance.

## Base Offense Level

17.     The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in Count One is 24 under Sentencing Guidelines Manual § 2D1.1(c)(8).

## Acceptance of Responsibility

18.     The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility.  In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government may make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

19.     Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

20.     Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

21.     The government agrees to recommend a sentence within the applicable sentencing guideline range, as determined by the Court.

8

## Court's Determinations at Sentencing

22.      The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

23.      The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

24.      The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction.  The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule.  The defendant agrees not to request any delay or stay in payment of any and all financial obligations.  If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

25.      The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and

9

sworn financial statement on a form provided by FLU and any documentation required by the form.

## Special Assessment

26.     The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## DEFENDANT'S WAIVER OF RIGHTS

27.     In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

    a.     If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

    b.     If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

    c.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

    d.     At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

10

e.    At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

28.    The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

29.    The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

30.    The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## Further Civil or Administrative Action

31.    The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any

11

other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

32. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

33. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

34. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

35. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

36. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea

12

agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

37.     The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

13

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: _April 02 2021_     _____
RICKY CHRISTOHPER
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: _April 02, 2021_     _____
GREGORY R. PARR
Attorney for Defendant

For the United States of America:

Date: _April 2, 2021_     _____
RICHARD G. FROHLING
Acting United States Attorney

Date: _April 2, 2021_     _____
GAIL J. HOFFMAN
ELIZABETH M. MONFILS
Assistant United States Attorneys

14